IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JOSSUE MENDOZA LUNA,                                                                    PLAINTIFF

versus                                                         CIVIL ACTION NO. 5:08cv266-DCB-MTP

BRUCE PEARSON, Warden;
and ANTHONY CHAMBERS,
Clinical Director                                                                          DEFENDANTS

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [24] filed by Defendants. Having reviewed the motion, the entire record in this matter and the applicable law, the undersigned recommends that the motion be granted and that Plaintiff's claims against Defendants be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiff Jossue Luna Mendoza is a federal inmate currently incarcerated at the United States Penitentiary in Atlanta, Georgia (USP Georgia), serving a 168-month sentence on a conviction for Conspiracy to Distribute Methamphetamine. Plaintiff was transferred to USP Georgia from the Federal Correctional Complex in Yazoo City, Mississippi (FCC Yazoo City) - where the claims in the instant action arose - on June 17, 2008. *See* Exhs. 1 & 1A to Motion to Dismiss.

Plaintiff alleges that while incarcerated in administrative detention in the Special Housing Unit (SHU) at FCC Yazoo City in late October or early November 2007,[1] his nose began to

---

[1] On September 29, 2007, Plaintiff was involved in a disturbance and received an incident report (for failing to obey a staff member's orders). Plaintiff admitted to the charge when he appeared before the Disciplinary Hearing Officer and, therefore, was found to have committed the prohibited act. As punishment, he was placed in administrative detention. *See* Exhs. 4, 5 & 7 to Motion to Dismiss.

bleed, and although he was seen by medical personnel[2] on various occasions and was given medication, the bleeding continued. Plaintiff claims that his request to see a specialist was denied, and he kept bleeding up to and after his transfer from FCC Yazoo City to USP Georgia. *See* Complaint at 3-7. Plaintiff alleges that he spoke with Defendants Dr. Anthony Chambers, Medical Director at FCC Yazoo City, and Bruce Pearson, Warden at FCC Yazoo City, on several occasions and told them that his nose had been bleeding, that he was in constant pain, that he was not receiving adequate medical treatment, and that his abilities to eat, sleep and work had been adversely affected. *See* [12] ("Motion to Supplement the Pending Civil Suit with the Proper Names of Defendant's [sic] and Additional Facts in Support Thereof").

Plaintiff filed his *Bivens*[3] Complaint [1] on August 18, 2008. Defendants filed the instant motion on March 5, 2009. Plaintiff has not responded to the motion.[4]

## STANDARD FOR SUMMARY JUDGMENT

Because Defendants have submitted matters outside the pleadings with their Motion to Dismiss or, in the Alternative, for Summary Judgment [93], the motion should be characterized as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991). Summary judgment shall be granted "if the pleadings, depositions, answers

---

[2] None of the medical personnel who personally provided medical treatment to Plaintiff are defendants in this action. Plaintiff's primary medical provider was Dr. Norma I. Natal, a Staff Physician at FCC Yazoo City. *See* Exh. 3 to Motion to Dismiss (Plaintiff's medical records).

[3] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). A *Bivens* action mirrors a civil rights action brought under 42 U.S.C. § 1983, the difference being that a *Bivens* action applies to alleged constitutional violations by federal actors, while a section 1983 action applies to alleged constitutional violations by state actors. *See Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005).

[4] On April 29, 2009, when Plaintiff had failed to respond to the motion, the court entered an Order [26] directing Plaintiff to respond by May 18, 2009; otherwise, the court warned Plaintiff, the motion would be considered and ruled upon without his response.

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 712 (quoting *U.S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

ANALYSIS

As an initial matter, Defendants argue that Plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983 or "any other Federal law." Accordingly, federal prisoners filing suit under *Bivens* "must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." *Porter v. Russels*, 534 U.S. 516, 524 (2002); *see also Schipke v. Van Buren*, 239 Fed. Appx. 85, 86 (5th Cir. Aug. 30, 2007). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citations omitted).[5]

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Schipke*, 239 Fed. Appx. at 86 (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir.1994)). The Fifth Circuit has taken the position that exceptions to the exhaustion requirement only apply in "extraordinary circumstances," and the prisoner bears the burden of demonstrating the futility or unavailability of administrative review. *Id.*

It appears that Plaintiff has failed to exhaust his administrative remedies, as there are no

---

[5] The BOP's Administrative Remedy Program ("ARP") is set forth at 28 C.F.R. § 542.10, *et seq.* The first step of the ARP process is the informal presentation of the issue to prison staff. If that does not resolve the issue, the inmate must submit a formal Request for Administrative Remedy. If the inmate is not satisfied with the warden's response to that request, he or she may submit an appeal to the appropriate BOP regional director, and may then appeal that decision to the General Counsel. That step "is the final administrative appeal" and its completion, therefore, constitutes exhaustion of administrative remedies.

administrative remedy filings in the BOP's records regarding Plaintiff's claims in the instant action. *See* Exh. 6 to Motion to Dismiss (Administrative Remedy Generalized Retrieval). Nor has Plaintiff established that any exception to the exhaustion requirement applies.[6] Nevertheless, the court further finds that Defendants are entitled to summary judgment on Plaintiff's claims on their merits, as discussed below, and that Plaintiff's claims against Defendants should be dismissed with prejudice.

Statutory Immunity for Dr. Chambers

Defendants argue that Dr. Chambers has absolute statutory immunity from suit pursuant to 42 U.S.C. § 233(a), which provides in part as follows:

> The remedy against the United States ... for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

The Fifth Circuit has held that Section 233(a) "provides immunity from suit for a PHS [Public Health Service] employee who causes personal injury to a patient 'resulting from the performance of medical, surgical ... or related functions,' provided that the employee was acting within the scope of his employment at the time of the incident causing such injury." *Schrader v. Sandoval*, 1999 WL 1235234, at * 2 (5th Cir. Nov. 23, 1999). As a result, "if the employee's actions occurred within the course of his duties, a plaintiff's sole remedy is to proceed against the United States under the Federal Tort Claims Act." *Id.*; *see also Montoya-Ortiz v. Brown*, 154

---

[6] In his Complaint, Plaintiff alleges that a "counselor Mr. Drummon" refused his request for a BP-8, thereby denying him his right to exhaust administrative remedies. *See* Complaint at 7. Although Plaintiff does not specify where or when this alleged request occurred, it appears that this request was made after Plaintiff had already been transferred from FCC Yazoo City.

5

Fed. Appx. 437, 439 (5th Cir. Nov. 22, 2005) (affirming dismissal of *Bivens* claims, stating that Section 233(a) "preempts *Bivens* claims, providing that a plaintiff's sole remedy under that section is a claim brought under the FTCA."). Likewise, other jurisdictions have dismissed *Bivens* claims brought against PHS employees based on statutory immunity. *See Anderson v. Bureau of Prisons*, 176 Fed. Appx. 242, 243 (3d Cir. Apr. 11, 2006), *cert. denied*, 547 U.S. 1212 (2006); *Cuoco v. Moritsugu*, 222 F.3d 99, 107-08 (2d Cir. 2000); *Walls v. Holland*, 1999 WL 993765, at * 2 (6th Cir. Oct. 18, 1999); *Lewis v. Sauvey*, 708 F.Supp. 167, 169 (E.D. Mich. 1989).

At the time of the events in question, Dr. Chambers was employed by the BOP as the Clinical Director at FCC Yazoo City and was a commissioned officer in the U.S. Public Health Service with the rank of Commander. In this capacity, Dr. Chambers provided inmates with medical assessments, treatment and care, as well as handled various administrative matters for the Health Services Department. *See* Exh. 9 to Motion to Dismiss (Chambers Declaration). The record reflects that Plaintiff's allegations against Dr. Chambers involve his performance of medical or related functions while he was acting within the scope of his employment. Accordingly, the court finds that Dr. Chambers has statutory immunity under 42 U.S.C. § 233(a) and, therefore, he is entitled to summary judgment on Plaintiff's claims.

<u>Claims Against Warden Pearson - No Personal Involvement</u>

There is no *respondeat superior* liability in *Bivens* actions. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Thus, in order to be liable, a prison official must either be personally involved in the acts that caused the constitutional deprivation, or must "implement a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Id.* As set forth in his Declaration, Warden Pearson holds a supervisory position at FCC Yazoo City, is not medically trained, and was not personally involved in providing Plaintiff's medical care or in

making any decisions regarding what medical care Plaintiff was to receive.[7] Rather, Warden Pearson delegated the day-to-day operations of the Health Services Department, including the provision of medical care to inmates, to various health care staff. In doing so, Warden Pearson "relied on FCC Yazoo City's medical staff (including physicians and other health care professionals) for medical determinations as to inmates' treatment needs." *See* Pearson Decl. ¶ 3 (Exh. 10 to Motion to Dismiss). Warden Pearson recalls that Plaintiff would sometimes complain to him about his nosebleeds and Warden Pearson would refer him to medical staff for evaluation and treatment. This was Warden Pearson's only involvement with Plaintiff's medical treatment, to the best of his recollection. *See* Pearson Decl. ¶ 4.

Thus, because Warden Pearson was not personally involved in Plaintiff's medical treatment, and because there is no *respondeat superior* liability in a *Bivens* action, Plaintiff's claims against Warden Pearson should be dismissed.[8] *See Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (holding that because the warden and medical treatment director "lacked medical expertise, they cannot be liable for the medical staff's diagnostic decision not to refer [plaintiff] to a doctor to treat his shoulder injury"); *Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990) (holding that supervisory officials are entitled to rely on expertise of, and medical judgments made by, prison physicians with respect to inmates' medical treatment); *see also Poullard v. Blanco*, 2006 WL 1675218, at * 5 (W.D. La. June 9, 2006) (dismissing claim of failure to provide adequate medical care against supervisory officials who "acted consistent with their roles in the prison administration by addressing plaintiff's grievance or referring him to an avenue by which he might obtain relief").

No Deliberate Indifference

---

[7] Warden Pearson is "responsible for the general supervisory management and oversight of the operation of the entire complex [at FCC Yazoo City]." *See* Pearson Decl. ¶ 2.

[8] Plaintiff does not allege that Warden Pearson implemented a deficient policy.

7

Even if Plaintiff could establish that Warden Pearson had sufficient personal involvement in the alleged denial of medical care, or that Dr. Chambers was not entitled to statutory immunity, he still could not establish a constitutional violation on the part of either Defendant.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. Mar. 19, 2004), *cert. denied*, 543 U.S. 864 (2004), (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The Fifth Circuit has noted that deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may not be held liable under this standard pursuant to Section 1983 unless the Plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id.* at 838.

To successfully make out a showing of deliberate indifference, plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 Fed. Appx. at 965 (quoting *Domino*, 239 F.3d at 756). "Unsuccessful medical treatment, ordinary acts of negligence, or medical malpractice do not constitute a cause of action under § 1983." *Id.* (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999)). The plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, 2006 WL

2827551, at *7 (S.D. Miss. Sept. 25, 2006). Additionally, a prisoner's mere "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

The record in this case demonstrates that Plaintiff received abundant medical care for his nosebleeds from providers at FCC Yazoo City, including numerous physical examinations, the prescription of medications, blood tests and x-rays.[9] *See* Exh. 3 to Motion to Dismiss. Dr. Chambers averred that he reviewed the care Plaintiff was receiving and determined that it was appropriate and, therefore, there was no need for him to intervene in his treatment. Dr. Chambers further averred that "[a]t no time did [he] conclude that the medical care provided for [Plaintiff] was inadequate to provide him with needed care." *See* Chambers Decl. ¶ 5-6. Warden Pearson also stated that at no time did he "conclude that the medical care provided for [Plaintiff] was inadequate to provide him with needed care," and denied that he was ever deliberately indifferent to Plaintiff's medical needs. *See* Pearson Decl. ¶¶ 4-5. This un-rebutted evidence precludes a finding of deliberate indifference. Plaintiff's mere disagreement with the type of medical treatment he received, or allegations that he should have received different care, are not enough to establish an Eighth Amendment violation.

Plaintiff also cannot establish a constitutional violation based on the lack of referral to a specialist. First, a plaintiff has no automatic constitutional right to an outside referral or specialist. *See Randle v. Mesrobian*, 165 F.3d 32, 2007 WL 551941, at *3 (7th Cir. 1998) ("Prisons are not required to keep specialists on staff, and inmates have no automatic right to consult with outside physicians."); *see also Green v. McKaskle*, 788 F.2d 1116, 1127 (5th Cir. 1986) (stating that the "mere claim that [prisoner] was not afforded a doctor who specialized in the treatment of paraplegia or a trained physical therapist does not, of itself, state a claim of

---

[9] Indeed, Plaintiff concedes that he received treatment for his nosebleeds and, at one point, his nose stopped bleeding and he felt better. *See* Complaint at 4-5.

9

deliberate indifference"). Moreover, Dr. Chambers averred that Plaintiff was considered for referral to an outside ear, nose and throat specialist, but it was determined that a referral was not warranted because Plaintiff was not complying with the regimen prescribed by his treating physician. *See* Chambers Decl. ¶ 7. Indeed, there are numerous entries through Plaintiff's medical records describing how Plaintiff failed to follow his doctor's treatment instructions. *See* Exh. 6 to Motion to Dismiss. These facts are un-rebutted by Plaintiff, and Plaintiff has failed to establish that the failure to refer him to an outside specialist constituted deliberate indifference.

Based on the foregoing, Defendants are entitled to summary judgment on Plaintiff's claims, as Plaintiff has failed to establish that they were deliberately indifferent to his serious medical needs.

Qualified Immunity

Although Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant[s][are] entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999). Thus, because the court has found that Plaintiff has failed to establish his claims against Defendants, it need not reach the question whether Defendants are entitled to qualified immunity. *Wells*, 45 F.3d at 93.

RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [24] be granted and that Plaintiff's claims against Defendants be dismissed with prejudice.

NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 11th day of June, 2009.

s/ Michael T. Parker
United States Magistrate Judge